# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIE A. LEONARD, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 2:13-cv-455 |
| v. | )<br>) Judge Mark R. Hornak |
| CITY OF PITTSBURGH, NATHAN E. HARPER, *in his individual capacity*, and ADAM M. SKWERES, *individually and an officer of the Police Department of the City of Pittsburgh*, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## OPINION

**Mark R. Hornak, United States District Judge**

This case requires the Court to consider the application of the statute of limitations in litigation which centers on allegations of abuse of public office of a most serious nature: a City Police Officer who used his power of the state as a weapon of sexual coercion on vulnerable women.

Pending before the Court is Defendants City of Pittsburgh ("City") and City Chief of Police Nathan Harper's (collectively, "City Defendants") Motion to Dismiss Plaintiff Christie Leonard's Complaint, ECF No. 5. The City Defendants contend that the Plaintiff's claims were filed beyond the applicable statute of limitations, and are therefore time-barred as a matter of law. The Court has considered Plaintiff's Complaint, ECF No. 1-2, the pending Motion, Plaintiff's Response, ECF No. 10, and the briefs in support of and in opposition to these motions, ECF Nos. 6, 11, and heard oral argument on July 18, 2013. The matter is ripe for disposition.

The application of the statute of limitations and its related accrual and tolling doctrines in analogous circumstances has been recently and authoritatively considered by our Court of

Appeals and by Pennsylvania's appellate courts, and based on those decisions, the Motion to Dismiss is granted, and the claims against the City Defendants will be dismissed with prejudice as barred by the applicable statute of limitations.

## I. BACKGROUND

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations in the Second Amended Complaint as true and draw all reasonable inferences in the Plaintiff's favor. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).[1] Therefore, for the purposes of the disposition of the City Defendants' Motion, the essential facts are as follows.

Ms. Leonard's and Defendant Officer Adam Skweres' paths first crossed in June 2008, when Ms. Leonard was to testify as a witness to a crime Officer Skweres was investigating. Compl. ¶¶ 8-10, ECF No. 1-2. Officer Skweres first threatened Ms. Leonard with arrest if she did not appear in court to testify in person, and at the Allegheny County Courthouse on June 30, 2008, demanded Ms. Leonard accompany him outside the courtroom for a private conversation. *Id.* ¶¶ 11-13. During that conversation, Officer Skweres told Ms. Leonard that he knew she was involved in a child custody dispute involving the Allegheny County Department of Human Services Office of Children, Youth, and Families ("CYF"); that if she performed oral sex on him, he would write a positive letter to CYF; but if she refused, that he would write a negative letter and her three children would be taken from her. *Id.* ¶ 17. Ms. Leonard did in fact refuse, but Officer Skweres gave her "time to [re]consider", gave her his personal cell phone number, and again threatened her with jail and the removal of her children. He told her not to tell anyone

---

[1] While the federal courts universally must accept as true the well-pleaded, non-conclusory factual allegations of a plaintiff's civil complaint, the Court notes that in this case, the ordeal described by Ms. Leonard deserves further acknowledgement of its veracity. Officer Skweres has already pled guilty in state criminal court to the very conduct against Ms. Leonard that forms the basis of her civil complaint. *See* text accompanying *infra* n.2.

2

about their conversation. *Id.* ¶¶ 18-20. Fearful of Officer Skweres' threats, Ms. Leonard did not immediately report the incident to the Bureau of Police, but did tell CYF, her counselors, and her family. *Id.* ¶¶ 22-23.

Sometime "in the weeks following the incident," Ms. Leonard learned that other women had been similarly victimized by Officer Skweres, "most notably" a woman she met at a Foodland grocery store who was propositioned by Officer Skweres and then threatened by him with death. *Id.* ¶ 24. Though still fearful, within approximately two months of her encounter with Officer Skweres, Ms. Leonard contacted Detective Paul Beckert of the City of Police Office of Municipal Investigations and reported Officer Skweres' actions. Thereafter, Ms. Leonard was interviewed at her home with regard to the incident, and was subjected to two lie-detector tests, where she "felt intimidated by the officer conducting the tests, who gave the impression that the Bureau of Police did not believe her story." *Id.* ¶¶ 26-29. She apparently did not hear anything further from the Bureau of Police regarding the matter until January 2012, when it called her to give a further statement regarding the incident. Through the process of giving that statement, Ms. Leonard learned that the Federal Bureau of Investigations (FBI) was investigating Officer Skweres' conduct, which was apparently initiated by another of Officer Skweres' victims. *Id.* ¶¶ 33-34.

In late February or early March, 2012, Officer Skweres was arrested and charged in state court with official oppression, bribery, coercion, and indecent assault, based on allegations that he pressured women to engage in sex acts with him while he was on duty in four different incidents, notably, including Plaintiff's. *Id.* ¶¶ 35-37.[2] He was later charged relating to a fifth

---

[2] *See Comm. v. Skweres*, Allegheny Cnty. Ct. Cm. Pl. Dkt. Nos. CP-02-CR-0002969-2012; CP-02-CR-0002973-2012; CP-02-CR-0002974-2012 ; CP-02-CR-0002977-2012. A state court docket is a "public record" that the Court may consider at the motion to dismiss stage, *see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d

3

incident. *Id.* ¶ 39.[3] On March 11, 2013, Officer Skweres pled guilty to sexually assaulting five women and was incarcerated. *Id.* ¶ 41. However, because before that time, Officer Skweres had been released on bail, Plaintiff alleges that she still feared retaliation from him until then. *Id.* ¶ 40.

Plaintiff alleges that the City did not do enough to protect her (and others) from Officer Skweres. In particular, she alleges that (1) in 2005, Officer Skweres underwent and failed a psychological examination as part of his application with the Bureau of Police, *id.* ¶ 45; (2) in 2006, contrary to City policy, upon appealing the examination failure, Officer Skweres was afforded the opportunity for a second examination, which he passed, *id.* ¶¶ 46-48; (3) Defendants City of Police and Chief Harper knew of allegations of misconduct against Officer Skweres from Ms. Leonard and another victim in 2008 and 2009, but took no action against him, *id.* ¶ 44; and (4) they more generally were "aware that Bureau of Police Officers engaged in a pattern and/or practice of using coercion to gain sexual favors from detainees and/or victims of crimes," *id.* ¶ 49.

Ms. Leonard filed this suit in the Court of Common Pleas of Allegheny County on March 13, 2013, alleging that Officer Skweres and the City Defendants deprived her of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983,[4] and committed various state law torts. ECF No. 1-2. The City Defendants timely removed. ECF No. 1. Plaintiff's claims are as follows: Count I (vs. Officer Skweres): § 1983 Fourteenth Amendment violation of equal protection for gender-based harassment; Count

---

1192, 1196-97 (3d Cir. 1993), and the Court takes judicial notice of the state court dockets and records. *See Dec v. Pennsylvania State Police*, 2:12-CV-565, 2012 WL 6099078, at *2 n.3 (W.D. Pa. Dec. 7, 2012).

[3] *See Comm. v. Skweres*, Allegheny Cnty. Ct. Cm. Pl. Dkt. No. CP-02-CR-0010876-2012.

[4] Section 1983 provides a federal cause of action for an alleged violation of an individual's constitutional rights committed by a person acting under color of state law. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).

II and III (vs. City of Pittsburgh and Chief Harper, respectively): § 1983 Fourteenth Amendment violation for failure to train employees, failure to remove Officer Skweres, and engaging in a policy or practice of acting with deliberate indifference to citizens' rights; Counts IV and V (vs. Officer Skweres): state law intentional infliction of emotional distress, and false imprisonment, respectively. The claims against the City Defendants are brought under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), which permits liability against a municipality or local government under § 1983 where an "action pursuant to official municipal policy" caused that injury, but not for derivative liability under the doctrine of *respondeat superior*. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *id.*).

The City Defendants move to dismiss the counts against them in the Complaint (Counts II and III) under Fed. R. Civ. P. 12(b)(6), on the grounds that Plaintiff's suit is barred by the statute of limitations.[5]

## II.  LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does

---

[5] The docket reflects that Bryan Campbell, Esq. was listed on the Court's docket as counsel for Officer Skweres only until April 10, 2013. He appears to have rather swiftly withdrawn that appearance on that date. ECF No. 8. As of this date, no attorney appearance is currently entered on behalf of Officer Skweres. At oral argument, Plaintiff's counsel represented that they were considering seeking a default judgment against Officer Skweres.

not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

"A statute of limitations defense may be asserted in a motion to dismiss under Rule 12(b)(6) 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *Frasier-Kane v. City of Philadelphia*, No. 12-1757, --- F. App'x ---, 2013 WL 1277021, at *1 n.1 (3d Cir. Mar. 29, 2013) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994)).

## III. DISCUSSION

Plaintiff filed this suit more than four years after her encounter with Officer Skweres. The statute of limitations for a § 1983 case is governed by the personal injury tort law of the state where the cause of action arose, which in Pennsylvania is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 42 Pa. Cons. Stat. § 5524(2)). Plaintiff offers three reasons why the statute of limitations should be tolled in her case, making her suit timely: (1) the discovery rule, (2) the doctrine of fraudulent concealment, and (3) the duress doctrine. In *Kach*, the Third Circuit confronted factual circumstances analogous to those in this case, and its analysis of the complex interaction between state and federal statute of limitations principles primarily governs here. *See generally* 589 F.3d 626.

### A. STATUTE OF LIMITATIONS STANDARDS – STATE VS. FEDERAL LAW

While "[f]ederal law governs a [§ 1983] cause of action's accrual date," *Kach*, 589 F.3d at 634, "state tolling principles . . . govern § 1983 claims," *id.* at 639 (citing *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). But "[w]here state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances." *Id.* Under these

6

principles, the distinction between "accrual" and "tolling" in a § 1983 case is therefore a pertinent one, because it determines which jurisdiction's principles govern which inquiries.

The Third Circuit recently sought to clarify what may have been seen as a certain definitional laxity in the federal courts' distinctions between *accrual* of a cause of action, and the *tolling* of a statute of limitations, particularly in the context of the discovery rule, noting that "[e]ven the Supreme Court has on occasion confused the two concepts." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 149 (3d Cir. 2011) (*"Graham II"*). Our Court of Appeals explained that properly considered, "'accrual' of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of the facts could get it past a motion to dismiss for failure to state a claim." *Id.* at 150. At the time of accrual, "the period prescribed by the applicable statute of limitations ordinarily begins to run." *Id.* at 147. However, *after* a cause of action accrues, there may apply "various statutory and judge-made rules that operate to *toll* the running of the limitations period," in other words, "to stop its running", "abate it," or "suspend or interrupt it." *Id.* (internal citations and marks omitted)). In short, "[t]ime that passes while a statute is tolled does not count against the limitations period." *Id.* at 147-48.

*Graham II* considered, in the context of a copyright action, the federal "discovery rule," a common law doctrine that holds that the statute of limitations does not begin to run "until the plaintiff learns of his cause of action or with reasonable diligence could have done so." *Id.* at 141. The court observed that while several courts in the past had conversely described the discovery rule "both as delaying the accrual of a cause of action and as tolling the running of the limitations period," the particular verbiage chosen was of little import – either way, the clock started running from the point of discovery. *Id.* at 148. However, the distinction became critical

in *Graham II*, which considered the calculation of prejudgment interest: the general rule was that prejudgment interest is only calculated "from the time the claim *accrues*," seemingly excluding tolling. *Id.* at 146 (internal quotation omitted). In that case, the twelve-year gap between the formal "accrual" of the cause of action and the Plaintiff's discovery of its injury was worth a lot of money. *Id.* Applying the more precise definitions of "accrual" and "tolling," the Third Circuit held as a matter of federal common law that the discovery rule was a species of the latter. *Id.* at 150-151. This is because for a plaintiff to have a complete cause of action, she must not ordinarily prove her *knowledge* of that fact; her discovery of her claim therefore cannot determine when the cause of action accrues. *Id.* It follows that "[s]ince it cannot be an accrual doctrine, the discovery rule must instead be one of those legal principles that operate to toll the running of the limitations period after a cause of action has accrued." *Id.* at 150.

Prejudgment interest is, of course, not the only (or even most common) scenario in which the distinction between "accrual" and "tolling" is relevant.[6] Taken together, *Graham II* and *Kach* therefore generate a syllogism that dictates the applicable discovery rule in a § 1983 case. Federal law governs accrual, while state law governs tolling. *Kach*, 589 F.3d at 634, 639.[7] The

---

[6] *Graham II*'s reasoning did in part rely on policy considerations unique to the prejudgment interest scenario – the court found as further "appeal" of its conclusion the fact that allowing prejudgment interest to start at the earlier accrual date, rather than the later discovery date, was in line with the "fundamentally plaintiff-friendly purpose" of the discovery rule. *Id.* at 150. However, the rest of the *Graham II* opinion carefully considered the intricacies of the accrual/tolling distinction well beyond the facts of its own case, and its holding is of no less force outside the prejudgment interest scenario. *See id.* at 148 (string citation of twenty-four federal courts of appeals cases of wide-ranging subject matter); *see also Southersby Dev. Corp. v. Borough of Jefferson Hills*, 852 F. Supp. 2d 616, 623-24 (W.D. Pa. 2012) (applying *Graham II* in § 1983 case); *Peguero v. Meyer*, No. 12-3921, --- F. App'x ---, 2013 WL 1303796, at *2 (3d Cir. Apr. 2, 2013) (under *Graham II*, applying New Jersey's discovery rule in *Bivens* action).

[7] *Kach* itself, before discussing Pennsylvania's discovery rule in the § 1983 context, did appear to examine and apply a version of a federal discovery rule under *United States v. Kubrick*, 444 U.S. 111, 122-23 (1979) and its progeny *Barren v. United States*, 839 F.2d 987 (3d Cir. 1988) and *Miller v. Philadelphia Geriatric Center*, 463 F.3d 266 (3d Cir. 2006), all three Federal Tort Claims Act (FTCA) cases. *See* 589 F.3d at 635-37. While this approach creates some tension with *Graham II*, the *Kach* court may have been motivated to consider *Miller* on the grounds that the plaintiff herself "relie[d] almost exclusively on" that decision in her appeal – *Miller* and *Barren* more particularly considered tolling in the case of mental disability, which was also alleged in Kach's case.

discovery rule is one of tolling, not of accrual. *Graham II*, 646 F.3d at 150-151. Therefore, state law governs the discovery rule in a § 1983 case.[8]

## B. ACCRUAL

Again, under *Graham II*, "'accrual' of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of the facts could get it past a motion to dismiss for failure to state a claim." 646 F.3d at 150. Here, it is therefore plain that Ms. Leonard's claims against both Officer Skweres and the City Defendants would have accrued at the time of her injurious encounters with Officer Skweres. Her constitutional injury at his hands would have then been complete, and if her injuries were also the result of the City Defendants' policies or a practice of indifference towards her civil rights in place at that time, her claim against them would have then accrued as well. Therefore, Ms. Leonard's claims accrued around June 2008.

## C. PENNSYLVANIA TOLLING PRINCIPLES

Following *Graham II* and *Kach*, the Court must now examine whether any of Pennsylvania's tolling principles operate to toll the statute of limitations. As mentioned above, Ms. Leonard invokes three state law tolling principles: discovery, fraudulent concealment, and duress.

---

In this Court's estimation, the Third Circuit's statute of limitations analyses in two other cases are more in line with its *Graham II* holding: *Lake v. Arnold*, 232 F.3d 360, 367 (3d Cir. 2000) (§ 1983) and *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 335-36 (3d Cir. 2004) (federal common law of bankruptcy cause of action borrowing Pennsylvania's statute of limitations), both of which applied *Pennsylvania's* discovery rule. *See also Peguero*, 2013 WL 1303796, at *2 (applying New Jersey's discovery rule in *Bivens* action).

[8] The Court also notes that this conclusion does *not* mean that it discerns any meaningful difference between Pennsylvania's state rule of law and the Third Circuit's federal standard regarding the discovery rule. *Compare Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005) (statute of limitations should be tolled "until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct") *with Oshiver*, 38 F.3d at 1386 (tolled until plaintiff "should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct.").

1. **Discovery Rule**

Ms. Leonard's first argument is that while she was immediately aware in June 2008 that Officer Skweres' actions violated her rights, she did not, and could not, know until much later that the City Defendants had *also* contributed to her injury by a policy or pattern of indifference. According to Ms. Leonard, the statute of limitations should be tolled until, and the clock should begin to start running, in January 2012, "when the FBI got involved and alerted her to the fact that [City] Defendants failed to investigate complain[t]s against Skweres and other past and present officers." Pl.'s Br. Opp. Defs.' Mot. Dismiss at 6, ECF No. 11.

Under Pennsylvania's discovery rule, the statute of limitations should be tolled "until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). In *Wilson v. El-Daief*, 964 A.2d 354, 362 (Pa. 2009), the Pennsylvania Supreme Court clarified that *Fine* espoused a relatively "narrower" view of the discovery rule. It explained that as between courts that "have equated 'injury' with 'legal injury,' keying the commencement of the limitations period to such time as the plaintiff has actual or constructive knowledge of her cause of action," and those that have employed "a stricter approach . . . tying commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct," Pennsylvania's formulation "reflects the narrower of the two" approaches. *Id.* at 364.

The Pennsylvania Superior Court's decision in *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912 (Pa. Super. Ct. 2005) is instructive. In that case, children who had been sexually abused by priests sued the Archdiocese of Philadelphia for covering up the abuse. The court held,

> the discovery rule is not applicable here. The child abuse is the injury in this matter, not the alleged cover-up by the Archdiocese. . . . Unlike traditional discovery rule cases where the injury, itself, is not known or cannot be reasonably ascertained, the plaintiffs' injuries, here, were known when the abuse occurred. The Group I Plaintiffs are really claiming that they were unaware, not of their injury, but of a secondary cause of their injury.

*Id.* at 920; *see also Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. Super. Ct. 2005) (citing *id.*).

A review of the facts here reveals that under the discovery rule, the statute of limitations for Ms. Leonard's claims against the City Defendants would have begun running in June 2008, when the initial incident with Officer Skweres occurred. Plaintiff admits that Officer Skweres' injury to her was "readily apparent." ECF No. 11 at 7. However, she paints the allegedly unconstitutional policies of the City as an "unknown cause" of that injury. ECF No. 11 at 8. But as in *Meehan*, the reality is that City Defendants' actions (or inactions) were at best secondary to Skweres' craven misconduct, which was what actually caused her injury. *See also New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997) ("the discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim. It is sufficient that [Plaintiff] was aware that its injury was caused in part by another person's conduct.").[9]

Moreover, *Wilson*, 964 A.2d at 362, and *Meehan*, 870 A.2d at 920, illustrate that it does not matter that Ms. Leonard did not realize until later that she may have been the victim of the type of *legal wrong* that could form the basis of a *Monell* claim against the City. *See also Vessels v. City of Philadelphia*, CIV.A. 09-5586, 2011 WL 4018137, at *8 (E.D. Pa. Sept. 8, 2011) (applying *Meehan* in the *Monell* suit involving police misconduct). This is especially so here,

---

[9] Although *New Castle County*, as a federal law case applying the federal discovery rule, does not control the Pennsylvania discovery rule inquiry, the Court finds it persuasive and applicable here, especially because there is substantial congruency between the Pennsylvania and federal "injury caused by another" component to the discovery rule. *See supra* n.8.

11

where she also immediately knew that the wrongdoer was an employee of the City, where she asserts that she was placed in fear of great harm by the fact of his City position, and where she relatively promptly reported that conduct to the City's own internal investigative arm. *See id.*

Both this case and *Meehan* are unlike *Fine v. Checcio*, 870 A.2d 850 (Pa. 2005), in which the court found the discovery rule applicable where a plaintiff knew shortly after a surgery removing his wisdom teeth that he was experiencing numbness, but did not know until later that it was the result of medical malpractice rather than a routine and temporary consequence of a properly-conducted surgery. The plaintiff in *Fine* did not immediately know that his injury was caused by another person's wrongful conduct, as is the case here.[10] Ms. Leonard's clock began to run at the time of her initial encounters with Officer Skweres, where it was immediately apparent to her that she was injured by the conduct of another, regardless of when she appreciated she might also have a viable legal claim against the City as to her injuries.

Further, the Court has the guidance of a recent non-precedential opinion from our Court of Appeals examining facts very similar to those here. In *Tengood v. City of Philadelphia*, No. 12-3465, --- F. App'x ---, 2013 WL 2933747 (3d Cir. June 17, 2013), inspectors of a city-run urban improvement program allegedly unlawfully entered the plaintiff's home on multiple occasions and engaged in various instances of wrongdoing. The plaintiff argued that although filed more than two years after the wrongful acts, his *Monell* claim against the city should not have accrued until years after the acts occurred, when a federal Grand Jury Presentment was published that charged officials of that program with using their authority as a ruse to enter

---

[10] To be sure, *Meehan* and *Fine* were not *Monell* cases. While *Monell* certainly is *not* a method of asserting *respondeat superior* liability, *see Connick*, 131 S. Ct. at 1365, a *Monell* claim still must be predicated on an underlying constitutional violation, *Stiegel v. Peters Twp.*, 2:12-CV00377, 2012 WL 3096663, at *6 (W.D. Pa. July 30, 2012). In other words, Ms. Leonard does not identify any independent way that the City injured her that does not implicate Skweres' abuse as a fundamentally necessary link in the chain – the City's acts remain, at best, a "secondary cause." *See also Tengood*, 2013 WL 2933747, at *4 n.5.

12

people's homes and steal various personal items, and that related their scheme to a lack of administrative oversight and poor record keeping. *Id.* at *2-4. While the *Tengood* court's holding rested on other grounds, it noted that the appellant's proposed theory for delaying his *Monell* claim has "no basis in our precedent." *Id.* at *4 n.5 (citing, *inter alia*, *New Castle County*, 111 F.3d at 1125; *Oshiver*, 38 F.3d at 1386).[11] Thus, a plaintiff who is immediately aware that she is the victim of the wrongful acts of a municipal official may not delay the accrual of a claim against the municipality until she also discovers that she might have a viable *Monell* claim.

Moreover, the Court would note that even if Plaintiff's discovery rule argument were not categorically unavailable, her "reasonable diligence" argument underlying it would likely fare no better. A plaintiff invoking the Pennsylvania discovery rule must "'establish that [s]he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Kach*, 589 F.3d at 642 (quoting *Wilson*, 964 A.3d at 362). "While reasonable diligence under Pennsylvania's discovery rule is an objective test, it is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Id.* at 641 (internal marks omitted).

Here, Ms. Leonard pleads that "in the weeks following the incident," she learned that other women had been similarly victimized by Officer Skweres, "most notably" a woman at a Foodland grocery store who was propositioned by him and then threatened with death. Compl. ¶ 24. Moreover, within two months of the initial incident, Ms. Leonard did in fact bring her

---

[11] In particular, the *Tengood* court viewed critically the "dicta" of the Second Circuit in *Pinauld v. County of Suffolk*, 52 F.3d 1139, 1156-57 (2d Cir. 1995), on which Ms. Leonard also relies: "a [*Monell*] cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a 'county policy or custom.'" *See Tengood*, 2013 WL 2933747, at *4 (quoting *id.*). For one thing, it appears that the Second Circuit itself is presently departing from its own statement in *Pinauld*. *See Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) ("declin[ing]" to follow *Pinauld*'s "demonstrabl[e] dictum"). More importantly, as noted by the *Tengood* court, that dictum appears contrary to the established law in our own Circuit – and in Pennsylvania.

concerns about Skweres' conduct to the City of Police Office of Municipal Investigations, demonstrating her knowledge of the fact that the City was at least in some way potentially responsible for his conduct. *Id.* ¶ 25. She gleaned the impression in subsequent interviews that at least one investigating officer "did not believe her story." *Id.* ¶ 28. Therefore, in a relatively short timeframe after the incident with Officer Skweres, Plaintiff had sufficient facts within her knowledge as to put a reasonable person on notice that at the least, the City could have been wrongfully looking the other way regarding Skweres' misconduct – long before February 2012, when Plaintiff became actually aware of the FBI's involvement in investigating the matter, and well before March 13, 2011, the date two years prior to her filing this action.[12]

## 2. Fraudulent Concealment

Second, Plaintiff invokes the doctrine of fraudulent concealment, which applies

> if through fraud or concealment, [the defendant] causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made.

*Fine*, 870 A.2d at 860.[13] Plaintiff argues that the City Defendants "concealed their own involvement in allowing those offenses [by Officer Skweres] to occur and continue – the policies and practices that allowed the violation of Ms. Leonard's constitutional rights." ECF No. 11 at 4.

The *Meehan* court rejected an application of the fraudulent concealment doctrine to its case, however, noting that

---

[12] The Court notes that even if it did apply the federal discovery rule instead of or in addition to Pennsylvania's discovery rule, the outcome would be no different. *See supra* n.8, n.9, and accompanying text (discussing substantial congruency between Pennsylvania and federal discovery rules).

[13] In *Fine*, the Pennsylvania Supreme Court found the doctrine to apply where the doctor who incorrectly performed the surgery allegedly on multiple occasions reassured the plaintiff that his post-surgery symptoms were routine. 870 A.2d at 854, 862.

14

> [t]he plaintiffs do not allege that the defendants' silence misled them into believing that the alleged sexual abuse did not occur, that it had not been committed by the priests or nun, or that it had not resulted in injury to appellants. The defendants never concealed from any of the plaintiffs the fact of the injury itself. Nor do the plaintiffs allege that they were lied to by the Archdiocese with regard to the identity of their abusers or their abusers' place within the Archdiocese, which if relied upon, would have caused them to suspend pursuit of their claims.

870 A.2d at 922-23 (citing *Kelly v. Marcantonio*, 187 F.3d 192, 201 (1st Cir.1999)); *see also Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 467 (Pa. Super. Ct. 2007) (citing *Meehan*, 870 A.2d at 922); *Delaney v. Archdiocese of Philadelphia*, 924 A.2d 659, 663 (Pa. Super. Ct. 2007) (same).

Similarly, Ms. Leonard does not allege that the City Defendants misled her into believing the abuse did not occur (even if they expressed skepticism towards her complaint), that it had not been committed by Officer Adam Skweres or any other police officer of the City of Pittsburgh, or that it did not result in injury to her. Those things she knew by virtue of her being directly impacted by Skweres' actions. Plaintiff brands as "the injury" the City's own policy of looking the other way from Skweres' abuses, "an injury" which the City fraudulently concealed, but the City's actions (or inactions) were at best secondary to Skweres' misconduct, which was what actually caused her injury.

Additionally and importantly, like the plaintiffs in *Meehan*, Ms. Leonard does not point to any affirmative act of concealment on the part of the City that caused her to relax her vigilance as to her claims: she states that the City "did nothing to address [her] complaints" and "kept Skweres on the Police force," actions she concludes "constituted fraudulent concealment." ECF No. 11 at 4. *See Meehan*, 870 A.2d at 923 ("[t]he general and systematic conduct alleged by the plaintiffs here, however, does not constitute an affirmative act for purposes of the fraudulent concealment exception and the plaintiffs have not shown that they relied on any affirmative act

15

of concealment by the defendants which caused them to forgo pursuit of their causes of action"). The City's failure to properly address Officer Skweres' misconduct, especially if drawn to its attention by Ms. Leonard, does not constitute a fraudulent concealment that would have led Ms. Leonard to "relax her vigilance" regarding either her claim against Officer Skweres –because it did not conceal that the incident occurred – or against the City Defendants themselves – because the City's inaction following Plaintiff's alarming allegations, rather than lulling Ms. Leonard into sitting on her rights, would have more sharply demonstrated the likelihood of the City's acquiescence to or even complicity in those wrongs. In short, while Ms. Leonard may have alleged that the City was fundamentally *indifferent to* her interests, she has not alleged its *concealment of* her rights, or of the injury to her interests.

### 3. Duress

Third, Ms. Leonard invokes the doctrine of duress. She argues that given Officer Skweres' position of authority, and the power of his office as an armed police officer cloaked with the power to arrest, out of fear of retaliation, she could not come forward with her claim until he was behind bars. While a rogue police officer who has demonstrated a willingness to use the power of his badge to behave in the most reprehensible manner is something wholly intolerable, the possibility of the duress doctrine tolling Pennsylvania's statute of limitations is foreclosed under state law. *Kach*, 589 F.3d at 640 ("Without so much as an intimation from the Pennsylvania courts that duress is a cognizable tolling device under Pennsylvania law, we decline Kach's invitation to manufacture such a device on our own initiative."); *see also Frasier-Kane v. City of Philadelphia*, 12-1757, 2013 WL 1277021, at *2 (3d Cir. Mar. 29, 2013) (citing *id.*). *Frasier-Kane*'s facts were also remarkably similar to those here – a woman was assaulted by a police officer who threatened to harm her if she told anyone else about the incident. *Id.* at

16

*1. Still, her duress argument was categorically "foreclosed" by *Kach*. *Id.* Therefore, Plaintiff is not able to demonstrate that any Pennsylvania state law doctrine applies to toll the statute of limitations in her case.

### D. FEDERAL TOLLING

In *Kach*, after the Third Circuit held that no Pennsylvania tolling doctrines applied, the Court noted that in a § 1983 case, "[w]here state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances." 589 F.3d at 643. While the *Kach* court expressed doubt that Pennsylvania law conflicts in any way with § 1983 or its underlying policies, it nonetheless proceeded to analyze the Plaintiff's claims under three federal equitable tolling principles. *Id.* The Court will therefore follow *Kach*'s lead in this case.[14]

These three principles are: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Id.* at 643 (quoting *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000)). The third principle plainly does not apply to the facts of this case. The first does not appear to differ from Pennsylvania's fraudulent concealment rule, and the Court has already explained that the City Defendants cannot be held to have misled Ms. Leonard with respect to her cause of action. *See Estate of Miller ex rel. Miller v. Hudson*, No. 12-2076, --- F. App'x ---, 2013 WL 2631539, at *2-3 (3d Cir. June 13, 2013) (finding Delaware's fraudulent concealment rule "analogous" to federal rule).

---

[14] Plaintiff does not specifically invoke these principles, but given the nature of the claims asserted, the Court believes it appropriate to consider them here nonetheless.

Therefore, as in *Kach*, the federal equitable tolling doctrine argument here boils down to the applicability of the "extraordinary circumstances" rule. In *Kach*, a fourteen year-old girl ran away from home to be with a security guard at her middle school, under whose influence she fell and with whom she became intimate, and then spent ten years living secretly in his home. 589 F.3d at 631. The Third Circuit held that while the facts of the case before it "may certainly be described as 'extraordinary' in the vernacular sense of the word," they were not sufficient to warrant the application of the federal equitable tolling rule. *Id.* at 645. It noted that our Circuit's "extraordinary circumstances" rule may well be limited to the facts of the *Lake* case, "where a guardian conspire[d] to deprive a mentally incompetent person of her constitutional and civil rights," in that case, by a forced sterilization. *Kach*, 589 F.3d at 644 (quoting *Lake*, 232 F.3d at 370-71). As in *Kach*, the ordeal suffered by Ms. Leonard is certainly alarming and extraordinary in the vernacular sense, but it does not contain any of the extremely limited factors, such as the conspiracy of a legal guardian to cause an involuntary sterilization, that permitted the application of this Circuit's "extraordinary circumstances" exception in *Lake*.

Our Court of Appeals also recently came to the same conclusion in *Frasier-Kane*, in which the plaintiff (who had been assaulted by a police officer and placed in fear of retaliation) also invoked the "extraordinary circumstances" exception. *Frasier-Kane*, 2013 WL 1277021, at *1. The *Frasier-Kane* court ruled that if *Kach* wasn't "extraordinary" as a matter of law, the case then before it was not either. *Id.* at *2 ("Plaintiff's alleged circumstances – much like those in *Kach* – do not rise to such a level."). It also distinguished a Ninth Circuit "extraordinary circumstances" case, *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996), where a class of Philippine nationals brought suit against their former President, Ferdinand E. Marcos, alleging that they suffered torture and other human rights abuses at his direction. In *Hilao*, not only were

18

the plaintiffs justifiably afraid of reprisals from Marcos himself, but the Philippine judiciary was also "effective[ly] dependen[t]" on him as well, he "exercised comprehensive control over Philippine society," and was also immune from suit while in office. *Frasier-Kane*, 2013 WL 1277021, at *2 (citing 103 F.3d at 773). As in *Frasier-Kane*, while Officer Skweres possessed state power while he was acting as a police officer, that power indisputably never came close to effective control over Pennsylvania's courts, the courts of the United States, federal law enforcement agencies, or society more generally. Thus, unlike the situation in *Hilao*, in which all avenues of judicial or law enforcement redress were foreclosed by the overarching and pervasive control of the Marcos regime, that was not the case here. Therefore, Ms. Leonard is unable to invoke this, or other, federal equitable principles to toll the statute of limitations.

## *IV.* *CONCLUSION*

While this Court does not doubt the veracity of Ms. Leonard's most troubling claims regarding the conduct of Officer Skweres, it is duty-bound to apply the federal and Pennsylvania statute of limitations rules recently explained and applied in the context of other cases involving harm arising from the demonstrated abuse of positions of power and authority. Because only the City Defendants have moved to dismiss Plaintiff's claims against them (and Officer Skweres has no attorney whose appearance is currently entered on his behalf), the Court concludes it is appropriate to dismiss only those counts of the Complaint lodged against the City Defendants, Counts II and III.[15] Therefore, the City Defendants' Motion will be granted, and these claims against the City of Pittsburgh and Chief Harper will be dismissed with prejudice.

---

[15] While Defendants also argue that Plaintiff's Count IV state law claim of intentional infliction of emotional distress should be dismissed as against them because they are immune under Pennsylvania's Political Subdivision Torts Claims Act, 42 Pa. C.S. § 8542, Count IV is asserted against Officer Skweres only, and therefore the City Defendants need not defend themselves against it, and the Court does not rule on it.

19

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: August 27, 2013

cc: All counsel of record